### GARVIN v. GARVIN.

1. ADVERSE POSSESSION—COLOR OF TITLE—FRAUD—DISCOVERY.—The statute of limitations in favor of one who holds under a fraudulent deed to land does not run until the person injuriously affected discovers the facts which constitute the fraud; and such deed being adjudged fraudulent, it cannot be permitted to operate as color of title to sustain a plea of adverse possession.

2. IBID.—IBID.—PLAT.—A plat of 4,000 acres cannot be used to sustain a plea of adverse possession under color of title to 500 acres included therein, but in no way defined on such plat.

Before FRASER, J., Aiken, April, 1893.

This was an action by John Garvin against R. C. Garvin for the recovery of a tract of land, commenced February, 1885. The charge of the judge (exclusive of his remarks on a side issue having no bearing whatsoever on the questions raised on the appeal) was as follows:

Gentlemen of the Jury: This action has been brought to recover possession of a tract of land, and damages for its retention. Now, in suing for land, the defendant is under no obligation to show his hand at all, till the plaintiff makes out a title; the defendant stands upon his possession till the plaintiff shows, in some way or other, that he holds title to it. Ordinarily it is done by proving a grant from the State, or in case a grant has been lost and cannot be found, a copy of the

grant; and sometimes, when it is not known whether there ever has been a grant at all, they rely upon a presumption of a grant, for under twenty years possession of a man who claims the land, or those under whom he claims, a grant is presumed. There is another mode, the one resorted to here, that is, that both of the parties who claim—the plaintiff and defendant—claim from a common source; not that he has a good title against the balance of the world, but when two parties come into court claiming land from a common source, each is claiming from a common source, the two parties coming in—for instance, Robert Garvin, the elder—both claiming under him, then the question is, who has the better title? The plaintiff himself introduced a deed from Robert Garvin to the defendant. That deed itself shows that the defendant claims from Robert Garvin. Then the plaintiff undertakes to show that he has a better title than Robert C. Garvin. Something was said about not attacking that conveyance from Robert Garvin on the ground of fraud. I will have more to say to you about fraud hereafter. That paper was introduced simply to show that the defendant claimed from Robert Garvin. The plaintiff can show in whatever way he pleases; he can show he has a better title, or, if a proper case, he can show that that title is fraudulent. On the equity side of the court, when it is attacked for fraud, about the first allegation is that the defendant executed a deed, and that that deed is fraudulent and void.

The first request to charge on the part of the plaintiff is: "That when, on the 7th day of January, 1878, the sheriff sold the land in dispute as the property of Robert Garvin, the lien of the Fox judgment on said land was valid and binding, and that the deed of the sheriff conveying said land to John Garvin gave him a paper title superior to that of the defendant, R. C. Garvin, from his father, dated the 15th of April, 1874." The sheriff's deed was younger than this deed—the sheriff's deed to the plaintiff was younger, but it conveys a good title in the opinion of the Supreme Court, and that is the law of the case, because, at the time of the sale, there was an execution of some sort in the sheriff's office, and at the same time there was a valid lien upon this property against Robert Garvin older than

the deed of Robert Garvin to R. C. Garvin, and it conveyed the title. That is good law.

Now the defendant sets up, however, that although the plaintiff had a good paper title from Robert Garvin to the sheriff, yet that he has a right founded upon what we know in this country as the statute of limitations, upon a certain kind of adverse possession which he held on that land for the requisite time. Well, if that is so, as held out, it will defeat any claim, however valid the plaintiff may show his title to be; yet, if the defendant can show successfully, that he has had possession of the land according to law, for the requisite time, that defeats the plaintiff's claim, and is what is known as a bar to the action. Now, the defendant has, upon that branch of the case, several requests to charge; the first is: "That if the jury believe, from the evidence, that the defendant went into possession of the lands in dispute under a contract to purchase the same, he held adversely to all persons, except Robert Garvin, and that the possession of the defendant, both before and after he received title, may be coupled together to make up the statutory period of ten years." That is good law, if he shows the requisite kind of possession, to which I'll call your attention hereafter.

"That if the defendant had continuous adverse possession of the land in dispute for a period of ten years, under the contract to purchase from his father, and the deed of conveyance executed to him by his father, in pursuance of said contract, before the purchase of the plaintiff at the sheriff's sale on the 8th day of January, 1878; this would give the defendant a good statutory title to the land in dispute, and the verdict should be for the defendant." That is good law, subject to some qualifications which I'll hereafter give you in reference to what is possession.

"That a person in possession of land subject to the lien of a judgment, acquires a good title thereto against the judgment creditor, if the possession be continued for a period of ten years, and if the jury believe, from the evidence, that the defendant has been in continuous and adverse possession of the lands in dispute for a period of ten years, he has acquired a

good title thereto, against any judgment lien to which the land was subject during said period, and the verdict should be for the defendant." That is good law, if it is proved.

&ast;   &ast;   &ast;   &ast;   &ast;

Now, the third request—the next request of the plaintiff—is as to the fraudulent character of that deed: "That if the jury find from the evidence that the deed from Robert Garvin to R. C. Garvin was intended to delay, hinder, and defeat the creditors of Robert Garvin, or any of them, and that both the grantor and grantee, Robert and R. C. Garvin, took part in such fraud, then R. C. Garvin can gain no advantage from said deed, for it is void, and cannot be used, even as color of title." (a) That proposition, I think, is too broad, and just to charge it as a whole, I think, would be not charging you what I believe to be law. At the same time, I propose to give the parties the benefit of the view which I may have in reference to it, and it is this: that that is very good law, provided it is modified. "Is void and cannot be used as color of title against"—perhaps I might say, "the creditor," but I will say in this case, "judgment creditors," till some notice of the adverse holding is given to the judgment creditors. If that paper could be used as color of title—assuming, now, that it was fraudulent and void—the party would stand in a better condition under his color of title than he could possibly stand under the deed, which is itself an absolute paper. Because, whenever a paper is fraudulent in itself, and is set up against a judgment creditor like this, he has a right to assail it for fraud, and the only thing that would stop his hands is the plea of the statute of limitations from the time of the notice of the fraud.

And, therefore, my judgment is (and I so instruct you), if you find that that paper was fraudulent between Robert Garvin and Robert C. Garvin, it could not be used for any purpose, not even as color of title, until in some way or the other the judgment creditor was affected with notice of that fraud. My reason briefly for this conclusion is, that where a deed is fraudulent, and the party claims under a fraudulent deed, he takes with some implied understanding between himself and the assignor of the deed, that it is not adverse; that he commences

by permission, and permissive possession is never a foundation for the plea of the statute of limitations. And when a man, therefore, commences under a fraudulent conveyance, he cannot use his fraudulent deed for any purpose whatever; there must be, in some way or other, notice brought home to them against whom he holds of the fraudulent nature of the deed.

(*b*) If you come to the conclusion, then, that the deed was a fraudulent deed (which is a question entirely for you) then the next question would be, whether the plaintiff in this case had any notice of the fraud. You may come to the conclusion (and it is a question entirely for you) that the conveyance was wholly *bona fide*, and that the defendant paid the money as he said he did pay it, and that would bring it back to the question of the plea of the statute of limitation. And it is then necessary to consider what is necessary to make the plea of the statute of limitations good.

(*c*) The defendant sets up first, under the plea of statute of limitations, a presumption of deed by possession prior to the deed of 1874, by way of parol agreement between his father and himself in reference to this land under which he went into possession, and he sets up as color of title a plat, I think the face of it covering about 4,000 acres of land; under that, defendant, according to his own statement on the stand, claimed 500 acres of that land. Now, the rule is, any paper showing the extent of a man's boundaries under which he claims is made color of title, and if the defendant had claimed the whole of that land, and set up that as his color of title, then he could have recovered so much of it as other people did not have a better title to. But when a man goes into possession of a part of a tract of land—say 4,000 acres—claiming only 500 acres, or 400 acres, as the case may be, of it, then the question is, does that color of title indicate at all what his boundaries are? I think not. I think, for the very same reason, a man living in any part of this county might say, "I own 500 acres of land, and I present the map of Aiken County as my color of title." Well, it is a very strong case against the defendant's view of that, and yet it illustrates the principle.

(*d*) If, then, he had no other color of title but that plat of

4,000 acres of land, claiming only 500 acres, without anything else to define the boundaries of those 500 acres, under this verbal agreement, to which he referred, he can only claim what he was in actual *pedis possessio* of for ten years by a fence or some other enclosure of the land included within the boundaries—in some cases the use of the wood where the boundaries are well known. Because a man in possession of land of well known boundaries—people use their lands for cutting wood, timbers, hauling straw, and everything of that sort—may extend his claims beyond his actual possession. Now, you have heard the testimony as to the 500 acres, and the land said to have been enclosed in some fields.

(*e*) Well, the next color of title which the defendant sets up, which describes the land, is that deed from his father. If that deed is *bona fide*, if he had ten years adverse possession under it, that would be sufficient. That is, if it was *bona fide*. That is for you to say—you heard the testimony. In order to make it good, it must be ten consecutive years from immediately preceding the commencement of the action, which was sometime in 1885—February, 1885. Now, it is for you to say whether he had it. If it was nine years and three hundred and sixty-four days, it would not be sufficient. It must be the full statutory period of ten years. Our statute, under which this claim of adverse possession is set up, says the defendant must have entered into possession of premises under claim of title of any right, founding such claim upon a written instrument, as being conveyance of the premises in question, or the decree or a judgment of a competent court, and there must have been a continuous possession of the premises. Well, if a man goes into possession and goes off for a day on business, that does not break his possession. But if a man uses it from day to day and from year to year, as such property is ordinarily used, it is sufficient.

*Mr. L. T. Izlar*, for appellant.

*Messrs. Henderson Bros.* and *Croft & Chafee*, contra.

February 24, 1894. The opinion of the court was delivered by MR. JUSTICE McGOWAN. This action was brought for the

recovery of a tract of land, stated in the complaint to contain 900 acres, and damages for its detention. It has been before this court several times. In its different phases it has been tried already four times on the Circuit, and three times in this court. See 13 S. C., 160; 14 *Id.*, 630; 27 *Id.*, 472, and 34 *Id.*, 388.[1] The evidence, except what was documentary, copies of deeds, &c., has not been printed in the Brief; but, in accordance with what we regard as the proper practice in a law case, the parties have "stated" the points of law involved for the consideration and decision of the court.

The plaintiff's title, as shown, rested on the judgment of John Fox *vs.* Robert Garvin *et al.*, obtained at Lexington, on April 3, 1868. This judgment had been transferred by transcript to Aiken County in August, 1875, and the land in dispute was sold under it as the property of Robert Garvin, the defendant in execution, and bought by the plaintiff, the owner of the judgment, on January 7, 1878, to whom the sheriff of Aiken County executed a deed. The right of the plaintiff to sell under the execution in the sheriff's office, and to refer said sale to the Fox judgment of 1868, had already been settled in the former appeals herein. The defendant, in making out his case, relied upon a deed made to him by his father, Robert Garvin, for valuable consideration, dated April 15, 1874, conveying 500 acres; and upon adverse possession under that deed, and also as color of title under a plat of 4,000 acres, including the said 500 acres conveyed to the defendant, but which said plat had no mark on it indicating the exact boundaries of the 500 acres claimed by defendant.

The defendant offered evidence tending to prove that he paid a valuable consideration for the land described in the deed to him (500 acres), and the plaintiff offered testimony tending to prove that said deed was made without consideration, and for the purpose of hindering and delaying the creditors of Robert Garvin. The defendant also offered evidence which tended to prove that he held a plat of the land described in the complaint, to wit: a plat of 4,000 acres, including the 500 acres described in the deed of Robert Garvin, to the defendant, R. C. Garvin,

[1] See, also, 21 S. C., 84 and 91, and 31 *Id.*, 581.—REPORTER.

adversely for the statutory period.    Plaintiff also put in testimony which tended to prove that the defendant did not hold the land in dispute adversely for the statutory period.

Plaintiff requested the judge to charge the jury as follows : "That if the jury find from the evidence that the deed from Robert Garvin to R. C. Garvin was intended to delay, hinder, and defeat the creditors of Robert Garvin, or any of them, and that both the grantor and grantee, Robert and R. C. Garvin, took part in such fraud, then R. C. Garvin can gain no advantage from said deed, for it is void, and can not be used even as color of title, for no man can take advantage of his own wrong. The defendant requested the judge to charge : "That if the jury believe from the evidence that the deed of Robert Garvin to R. C. Garvin, the defendant, under which the defendant claims title, was made with intent to hinder and delay creditors, and with fraudulent intent, yet, notwithstanding such fraud, if such deed on its face purports to convey the lands in dispute, such deed is color of title sufficient for the purpose of the statute of limitations, and if the defendant held the lands adversely for the period of ten years under such fraudulent deed, the plaintiff can not recover," &c.

After a very full and clear charge of the judge (which should appear in the report of the case), the jury found for the plaintiff the land in dispute, and the defendant appeals to this court for a new trial on three exceptions, which are in the record, merely giving extracts from the judge's charge; and we think the points made may be fully considered, under the questions stated in the case, as follows : (1) Does the statute of limitations run against the creditor of the grantor, in favor of one who knowingly takes land under a fraudulent deed, from the date of the deed, or only from the time when such creditors have notice of the fraud; or can the party in possession avail himself of such as color of title?    (2) Can one who is in possession of land use as a color of title a plat of 4,000 acres, when he claims only 500 acres of the land covered by the plat.    There being no resurvey or subdivision line on such plat to indicate the extent of the claim?

*First.* In the view that the conveyance to R. C. Garvin was

fraudulent and void, we think the statute of limitations did not commence to run in his favor until the discovery by the aggrieved party "of the facts constituting the fraud."

It can not be necessary to do more than cite the latest authority upon the subject. See *Beatie* v. *Pool*, 13 S. C., 383; *Hart* v. *Bates*, 17 *Id.*, 35, and *Richardson* v. *Mounce*, 19 *Id.*, 477. In the case of *Hart* v. *Bates*, it was held in terms that "A recorded deed from an embarrassed father to his son, expressed to be for valuable consideration, is not notice to parties in interest of secret fraud in the conveyance. * * * Adverse possession is not complete until full ten years have expired, and the statute does not begin to run in favor of a fraudulent deed until the discovery of the facts constituting the fraud." But it is urged that the judge should have charged as requested: "If the jury believe from the evidence that the deed to R. C. Garvin was made with the intent to defeat creditors, yet, notwithstanding such fraud, if such deed on its face purports to convey the land in dispute, such deed is color of title sufficient for the purpose of the statute of limitations; and if the defendant held the land adversely for the period of ten years under that fraudulent deed, the plaintiff can not recover," &c. We can not accept this view. It seems to us that when the conveyance is declared fraudulent and void, it is entirely wiped out; and we can not understand how the bare boundaries can remain as color of title to a possession which has been declared to be not adverse. "An invalid conveyance may operate as color of title, but it does not draw with it constructive possession, and does not of itself tend to prove adverse possession." *Childress* v. *Calloway*, 76 Ala., 130. Color of title amounts to nothing, unless in connection with adverse possession; and we have already determined that the possession of R. C. Garvin, for the want of notice to the parties, was not adverse in the sense of putting the statute in operation. "As a general rule, the claim of color of title must be *prima facie* valid, or what purports to be valid." That is to say, if the claim of the party was invalid upon its face, or the act or deed under which he claims is void, it can not be the foundation of an adverse possession. Tyler on Ejectment, &c., 870. We concur with the Circuit Judge

when he said: "In my judgment, if you find that the paper between Robert Garvin and Robert C. Garvin was fraudulent, it could not be used for any purpose, not even as color of title, until in some way or other the judgment creditor was affected with notice of that fraud," &c.

*Second.* The defendant further set up as "color of title," showing the extent of his constructive possession, a plat covering 4,000 acres, including the 500 which he claims; but without any line or mark upon its face, indicating the location of the particular 500 acres conveyed to him, and of which he was in possession. Upon this subject the judge charged: "Now, the rule is, every paper showing the extent of a man's boundaries, under which he claims, is made color of title, and if the defendant had claimed the whole of that land, and set up that as his color of title, then he could have recovered so much of it as other people did not have a better title to. But when a man goes into possession of a part of a tract—say 4,000 acres—claiming only 500 acres of it, then the question is, does that color of title indicate at all what his boundaries are? I think not," &c. In this we concur. That the instrument under which a party holds adversely by color of title must define the extent of the claim, is perfectly well settled. "He who enters under a claim or color of title may hold to the boundaries described in the instrument under which he claims. But if the boundaries described in the deed are ambiguous or incorrect, the party claiming under it cannot acquire title by constructive possession, but is limited to the land actually occupied," &c. 1 Am. & Eng. Enc. Law, 290, and numerous notes, among which it is stated that a grantee, whose lands are by his deed bounded by a definite line, cannot be said to claim under that instrument lands outside of that line, but he may acquire title to such lands by actual occupancy, &c. "By adverse possession for the statutory period, the occupant may establish a right to the land within his enclosure or actual occupation. But if he claims possession beyond the lands thus occupied, the extent and limits of that possession must be defined by reference to some colorable title, as a deed or plat, or by visible marked lines, reputed boundaries or other equivalent

evidence.   No right can be founded on an undefined possession ; for the jury can not find a verdict for the claimant without evidence which may enable them to locate the lands by metes and bounds." *Golson* v. *Hook,* 4 Strob., 23 ; *Gray* v. *Bates,* 3 *Id.,* 504.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.